**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| IN RE SUBPOENAS SERVED ON | : | Civil Action Nos.: | 18-mc-0095 (RC) |
| E. MARK BRADEN | : | | 18-mc-0151 (RC) |
| | : | | |
| IN RE SUBPOENAS SERVED ON | : | Civil Action No.: | 18-mc-0105 (RC) |
| EDWARD GILLESPIE AND JOHN | : | | |
| MORGAN | : | | |
| | : | | |
| IN RE SUBPOENAS SERVED ON THE | : | Civil Action No.: | 18-mc-0140 (RC) |
| REBUPLICAN NATIONAL | : | | |
| COMMITTEE, THE NATIONAL | : | | |
| REPUBLICAN CONGRESSIONAL | : | | |
| COMMITTEE, AND ADAM KINCAID | : | | |

**MEMORANDUM OPINION**

**GRANTING MOTIONS TO TRANSFER**

## I. INTRODUCTION

In this matter, the Court finds itself in a difficult position; it has been asked to rule on

discovery in an action overseen by a different United States district court, the Southern District

of Ohio, related to the voting rights of Ohio citizens; an issue with little to no connection to

Washington, D.C.  Pending before the Court are five motions to quash or enforce subpoenas

issued by the Southern District of Ohio seeking documents and testimony from recipients in

Washington, D.C.  The Plaintiffs in the underlying action—five organizations and several

individuals who are Democratic voters living in Ohio—have asked this Court to transfer two of

the subpoena disputes back to the Southern District of Ohio, pursuant to Federal Rule of Civil

Procedure 45.  One of the subpoena recipients, E. Mark Braden, has also asked this Court to

transfer the disputes in which he is involved.  Several of the subpoena recipients, however, resist

transfer.  Despite their protestations, as explained below, the Court concludes that transfer is

appropriate under Federal Rule 45, given the nature of the disputes and the posture and complexity of the underlying action.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

In the underlying action, Plaintiffs are challenging Ohio's 2011 congressional redistricting process—which resulted in the state's sixteen current United States congressional districts—as an unconstitutional partisan gerrymander.  *See* Second Am. Compl. ("SAC") ¶¶ 1–2, *APRI*, S.D. Ohio ECF No. 37. [2]  Plaintiffs claim that Ohio's congressional districts resulted from "a coordinated strategy by state and national Republicans to win control of the state legislature for the purpose of controlling the redistricting process."  Movants' Mem. Supp. Mot. Compel Compliance ("RNC Compel Mot.") at 1, *In re Subpoenas Served on RNC, NRCC, & Adam Kincaid ("RNC, NRCC, & Kincaid Subpoenas")*, No. 18-mc-0140, ECF No. 1-1; *see also* SAC ¶¶ 2–3.  Plaintiffs further claim that, having gained control, the Republicans deliberately excluded non-Republicans from the redistricting process and crafted a congressional district map that "would virtually guarantee" that Republicans would consistently win twelve districts and Democrats would win four districts.  *Id.* ¶¶ 47–61.  Plaintiffs argue that the state's congressional district map "intentionally burdens their: (1) First Amendment rights to associate for the advancement of their political beliefs, to express their political views, and to participate in the political process; (2) First and Fourteenth Amendment rights to cast a meaningful vote; and (3) Fourteenth Amendment right to equal protection under the law," and that it "exceeds powers granted to the states under Article I of the Constitution."  RNC Compel Mot. at 1; SAC ¶ 9.

---

[1] For additional background detail, see the Southern District of Ohio's recent opinion denying the defendants' motion to dismiss the underlying action.  *Ohio A. Philip Randolph Inst. ("APRI") v. Smith*, No. 18-0357, 2018 WL 3872330, at *1–2 (S.D. Ohio Aug. 15, 2018).

[2] All record citations to the underlying action are designated as "S.D. Ohio ECF No. . . ."

Plaintiffs' complaint, filed in the Southern District of Ohio earlier this year,[3] seeks (1) a declaration that Ohio's congressional district map is unconstitutional; and (2) an order enjoining any further elections under the map and requiring the implementation of a new map for use in future elections.[4] SAC ¶ 12.

The parties are now in discovery and, as explained in greater detail below, the Southern District of Ohio Judge overseeing the proceedings, Judge Timothy S. Black, has set an expedited discovery and trial schedule. Acting swiftly, so as to complete discovery before the December 19, 2018 deadline, Plaintiffs have subpoenaed several national Republican organizations and individuals associated with those organizations, seeking documents and testimony that Plaintiffs believe will flesh out the alleged conspiracy between national and Ohio Republicans to unconstitutionally redraw Ohio's congressional districts.

Certain recipients of Plaintiffs' subpoenas have resisted disclosing responsive documents that Plaintiffs believe are not protected by any privilege, and have conducted document searches that Plaintiffs believe are insufficient to comply with the Federal Rules of Civil Procedure.[5] The subpoena disputes involving subpoena recipients located in Washington, D.C. have been raised before this Court, rather than before the Southern District of Ohio, as required by Federal Rule of

---

[3] Plaintiffs' amended complaint names as defendants Ryan Smith, Speaker of the Ohio House of Representatives, Larry Obhof, President of the Ohio Senate, and Jon Husted, Ohio's Secretary of State, in their official capacities. *See generally* SAC. None of the parties involved in the subpoena disputes before this Court are defendants in the underlying action.

[4] Plaintiffs initially filed the underlying action in May 2018, and subsequently amended their complaint twice. The most recent iteration was filed in July 2018. *See generally* SAC.

[5] The Court refers to motions to quash subpoenas, motions to compel compliance with subpoenas, and other subpoena-related motions as "subpoena disputes."

Civil Procedure 45.[6]  The following is a brief description of the relevant subpoena recipients and their disputes with Plaintiffs.

### A.  Mark Braden

Mr. Braden, according to Plaintiffs, was one of the national Republican operatives involved in the scheme to unconstitutionally gerrymander Ohio's congressional districts.  Pls.' Mem. Law Opp'n E. Mark Braden's Mot. Quash Subpoenas ("Braden Quash Opp'n I") at 4, *In re Subpoena Served on E. Mark Braden ("Braden Subpoena I")*, No. 18-mc-0095, ECF No. 4. Mr. Braden is a Washington, D.C.-based attorney who was retained by the Ohio Attorney General's office as special counsel to advise the Ohio legislature during the 2011 redistricting cycle.  Mem. Supp. Mot. Quash ("Braden Quash Mem. I") at 1, *Braden Subpoena I*, ECF No. 1-1.  Plaintiffs contend that while Mr. Braden may have provided legal advice to the Ohio legislature, he also "played a key role in developing Ohio Republicans' redistricting strategy and guiding the map drawing process."  Braden Quash Opp'n I at 5.

Plaintiffs have served three subpoenas on Mr. Braden, seeking documents and testimony relating to the 2011 Ohio redistricting and other redistricting litigation in which Mr. Braden has been involved.  *See* Braden Quash Mem. I Ex. A & Ex. B, ECF Nos. 1-2 & 1-3; Mem. Supp. Mot. Quash ("Braden Quash Mem. II") Ex. 1, *In re Subpoena Served on E. Mark Braden ("Braden Subpoena II")*, No. 18-mc-0151, ECF No. 1-2.  In response, Mr. Braden filed motions in this Court to quash the subpoenas, arguing that the subpoenas seek privileged or irrelevant material and impose an undue burden on him.  *See generally* Braden Quash Mem. I; Braden

---

[6] As explained in further detail below, Federal Rule of Civil Procedure 45 governs the issuance of subpoenas in civil disputes, and the process by which subpoena issuers may force compliance with their subpoenas and subpoena recipients may quash them.  *See* Fed. R. Civ. P. 45.

Quash Mem. II. Mr. Braden subsequently filed motions to transfer both of his subpoena disputes to the Southern District of Ohio. *See generally* Ohio Att'y General & Non-Party Witness E. Mark Braden's Mot. to Transfer ("Braden Transfer Mot. I"), *Braden Subpoena I*, ECF No. 13; Ohio Att'y General & Non-Party Witness E. Mark Braden's Mot. to Transfer ("Braden Transfer Mot. II"), *Braden Subpoena II*, ECF No. 4.

## B. Edward Gillespie and John Morgan

Plaintiffs also believe that Edward Gillespie and John Morgan were among the national Republican operatives involved in the gerrymandering scheme. Movants' Mem. Supp. Mot. Compel Compliance ("Gillespie Compel Mot.") at 1–3, *In re Subpoenas Served on Edward Gillespie & John Morgan ("Gillespie & Morgan Subpoenas")*, No. 18-mc-0105, ECF No. 1-1. Mr. Gillespie was the Honorary Chairman of the Republican State Leadership Committee ("RSLC") from 2010 through early 2011, and then the Chairman of RSLC's Board of Directors during the Ohio congressional redistricting at issue in the underlying action. Decl. of Edward Gillespie ("Gillespie Decl.") ¶ 4, Edward Gillespie's & John Morgan's Brief Opp'n Gillespie Compel Mot. ("Gillespie Compel Opp'n") Ex. A, *Gillespie & Morgan Subpoenas*, ECF No. 4-1. "The RSLC is a political organization designed to elect Republicans to state level offices." *Id.* ¶ 5. Plaintiffs claim that the RSLC, among other national Republican organizations, attempted "to control the redistricting process in Ohio by guiding state Republican officials in creating a map to maximize the Republican share of Ohio's congressional delegation," and that as Chairman Mr. Gillespie was a "central architect" of these efforts. Gillespie Compel Mot. at 2.

Mr. Morgan is a "professional demographer"—an expert in population composition and distribution—who "regularly provide[s] services to states and localities responsible for drawing electoral maps." Decl. of John Morgan ("Morgan Decl.") ¶ 3, Gillespie Compel Opp'n Ex. C,

ECF No. 4-3.  He provided technical and map drawing redistricting services to the Ohio legislature in connection with the 2011 redistricting.  *Id*. ¶ 7.  In supplying his services, he visited Ohio twice in 2011 to administer "in-person, on sight training and guidance to the [Ohio] map drawers."  Morgan Decl. ¶ 8; SAC ¶ 49.  He claims that outside of these visits, his "work supporting Ohio's redistricting efforts was extremely limited."  *Id*. ¶ 9.

Plaintiffs have served subpoenas on Mr. Gillespie and Mr. Morgan, seeking documents from 2010 through 2012 that they believe will show the unconstitutional intent of national and state Republicans to secure a partisan advantage through the Ohio redistricting process. Gillespie Compel Mot. at 11; Gillespie Compel Mot. Ex. G & Ex. H, ECF No. 1-4.  Mr. Gillespie asserts that, despite a thorough search, he is not in possession of any documents responsive to Plaintiffs' subpoena.  *See* Gillespie Compel Opp'n at 5, ECF No. 4; Gillespie Decl. ¶¶ 14–15.  Mr. Morgan asserts that he has identified and produced to Plaintiffs all responsive, non-privileged documents in his possession.  Gillespie Compel Opp'n at 7; Morgan Decl. ¶ 15. Both individuals have resisted searching for and producing documents created prior to 2011, because they claim that those documents are unrelated to the 2011 Ohio redistricting and thus not relevant to Plaintiffs' action.  Gillespie Compel Opp'n at 1–2.  Mr. Gillespie lodges the same argument with respect to certain RSLC fundraising-related documents.  *Id*.

Plaintiffs claim that the document searches undertaken by Mr. Gillespie and Mr. Morgan were insufficient, and that their relevance objections are invalid.  Gillespie Compel Mot. at 11– 12.  Plaintiffs accordingly filed a motion with this Court to compel Mr. Gillespie and Mr. Morgan to conduct additional searches over a broader scope of documents.  *See generally id*. Recently, Plaintiffs also filed a motion to transfer this subpoena dispute to the Southern District of Ohio.  *See generally* Movants' Mot. Transfer Mot. Compel Compliance ("Gillespie Transfer

Mot."), *Gillespie & Morgan Subpoenas*, ECF No. 7. Mr. Gillespie and Mr. Morgan oppose this motion. *See generally* Opp'n Pls.' Mot. Transfer ("Gillespie Transfer Opp'n"), *Gillespie & Morgan Subpoenas*, ECF No. 8.

### C. Republication National Committee, National Republican Congressional Committee, and Adam Kincaid

Finally, Plaintiffs believe that the Republican National Committee ("RNC"), the National Republican Congressional Committee ("NRCC"), and Adam Kincaid were "central participants" in the alleged scheme. RNC Compel Mot. at 5–7. The RNC is a national Republican party committee under 52 U.S.C. § 30101(14) and 11 C.F.R. § 100.13. Aff. of Dalton L. Oldham ("Oldham Aff.") ¶ 5, Non-Party, RNC's, NRCC's, & Adam Kincaid's Opp'n RNC Compel Mot. ("RNC Compel Opp'n") Ex. C, *RNC, NRCC, & Kincaid Subpoenas*, ECF No. 11-2. It has a "special relationship" with the RSLC, described above, particularly with respect to congressional redistricting. *Id.* ¶ 6. The RNC and RSLC jointly retain individuals to assist with redistricting strategy, and the organizations collaborate in forming that strategy on a state-by-state basis. *Id.*

The NRCC is another national Republican party committee under 52 U.S.C. § 30101(14) and 11 C.F.R. § 100.13. Aff. of Chris Winkelman ("Winkelman Aff.") ¶ 5, RNC Compel Opp'n Ex. C. It supports the election of Republicans to the United States House of Representatives. *Id.* ¶ 5. All Republican House Members are members of the NRCC, and the Speaker of the House, when Republican, is a member of the NRCC's Executive Committee. *Id.* ¶¶ 6–7. NRCC staff and members, particularly NRCC staff who were also members of Republican Speaker of the House John Boehner's team, helped formulate strategy for the 2011 Ohio congressional redistricting. *Id.* ¶¶ 8–9. Adam Kincaid was the NRCC's Redistricting Coordinator from 2011–2012, and in that capacity conducted analyses of draft and final state redistricting maps. Aff. of Adam Kincaid ("Kincaid Aff.") ¶¶ 9, 13, RNC Compel Opp'n Ex. C.

In addition to Plaintiffs' subpoenas served on Mr. Gillespie and Mr. Morgan, Plaintiffs served subpoenas on the RNC, the NRCC, and Mr. Kincaid (together with Mr. Gillespie and Mr. Morgan, "Respondents"), seeking documents that they believe will further demonstrate national and state Republicans' unconstitutional intent to gerrymander Ohio's congressional districts. RNC Compel Mot. at 3; *id*. Ex. A–C, ECF No. 1-3. In response, these Respondents have produced 75 responsive documents, withheld 236 responsive documents as privileged under the First Amendment, the attorney-client privilege, and the attorney work-product doctrine, and provided a privilege log explaining their privilege assertions for each withheld document. RNC Compel Opp'n at 3–5, ECF No. 11.

Plaintiffs claim that (1) the RNC, the NRCC, and Mr. Kincaid have failed to establish that the subpoenas infringe their First Amendment privileges; (2) any First Amendment privileges held by these Respondents are outweighed by Plaintiffs' "significant interest" in the information sought by the subpoenas, considering the information's relevance to Plaintiffs' claims; and (3) the information sought is in large part not covered by the attorney-client or work product privileges. RNC Compel Mot. at 3–4. Plaintiffs filed a motion with this Court to compel the RNC, the NRCC, and Mr. Kincaid to comply more fully with the subpoenas. *See generally id*. Simultaneously, Plaintiffs filed a motion to transfer this subpoena dispute to the Southern District of Ohio. *See generally* Movants' Mot. Transfer Mot. Compel ("RNC Transfer Mot."), *RNC, NRCC, & Kincaid Subpoenas*, ECF No. 2. The RNC, NRCC, and Mr. Kincaid oppose this motion. *See generally* Non-Party, RNC's, NRCC's, & Adam Kincaid's Opp'n Pls.' Mot. Transfer ("RNC Transfer Opp'n"), *RNC, NRCC, & Kincaid Subpoenas*, ECF No. 9.

8

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a subpoena to produce materials, permit inspection of materials, or submit to a deposition "must issue from *the court where the action is pending.*"  Fed. R. Civ. P. 45(a)(2) (emphasis added).  However, if the subpoena's recipient does not comply to the serving party's satisfaction, the "serving party may move the court *for the district where compliance is required* for an order compelling production or inspection."  *Id.* 45(d)(2)(B)(i) (emphasis added).  Similarly, the subpoena's recipient may move "the court *for the district where compliance is required*" to quash or modify the subpoena.  *Id.* 45(d)(3)(A) (emphasis added).  However, under Federal Rule of Civil Procedure 45(f)—added to the Federal Rules in 2013—the court where compliance is required can transfer those motions to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances."  *Id.* 45(f).

### IV.  ANALYSIS

The Court first considers Mr. Braden's motions to transfer his subpoena disputes with Plaintiffs to the Southern District of Ohio.  The Court then considers Plaintiffs' motions to transfer their subpoena disputes with Mr. Gillespie, Mr. Morgan, the RNC, the NRCC, and Mr. Kincaid to the Southern District of Ohio.  Because Mr. Braden has consented to the transfer of his subpoena disputes, the Court grants his motions to transfer under Federal Rule 45(f).  While Respondents do not consent to the transfer of their subpoena disputes, the Court concludes that the disputes raise "exceptional circumstances" warranting transfer, also under Federal Rule 45(f).  Accordingly, the Court Grants Plaintiffs' motions to transfer those disputes.

### A. The Court Transfers Mr. Braden's Motions to Quash Plaintiffs' Subpoenas

The Court first considers Mr. Braden's motions to transfer his subpoena disputes with Plaintiffs to the Southern District of Ohio. As noted, under Federal Rule of Civil Procedure 45, the court where subpoena compliance is required may transfer a subpoena dispute to the court that issued the subpoena "if the person subject to the subpoena consents." Fed. R. Civ. P. 45(f). The subpoenas served on Mr. Braden were issued from the Southern District of Ohio and require compliance in Washington, D.C., over which this Court has jurisdiction. Moreover, Mr. Braden has consented to the transfer of his motions to quash the subpoenas; in fact, he seeks the transfer. *See* Braden Transfer Mot. I Ex. 1, *Braden Subpoena I*, ECF No. 13-1; Braden Transfer Mot. II Ex. 1, *Braden Subpoena II*, ECF No. 4-1. Accordingly, the Court concludes that Federal Rule 45's requirements are met, and it grants Mr. Braden's motions to transfer.

### B. The Court Transfers Plaintiffs' Motions to Compel Compliance with the Subpoenas Served on Mr. Gillespie, Mr. Morgan, the RNC, the NRCC, and Mr. Kincaid

The Court next considers Plaintiffs' contested motions to transfer their subpoena disputes with Mr. Gillespie, Mr. Morgan, the RNC, the NRCC, and Mr. Kincaid to the Southern District of Ohio. As noted, because Respondents do not consent to the transfers, the Court may transfer the motions only under "exceptional circumstances." Fed. R. Civ. P. 45(f). While the term "exceptional circumstances" is not defined in Rule 45(f), the Rule's Advisory Committee Note states that, while the "prime concern" when considering transfer "should be avoiding burdens on local nonparties subject to subpoenas," in "some circumstances . . . transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation[.]" *Id*. 45(f) advisory committee's note to 2013 amendment. The note also states that "[t]ransfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id*. And the Advisory Committee further cautions

that "the proponent of transfer bears the burden of showing that such circumstances are present[,]" and "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.*

"Thus, courts weighing transfer under Rule 45(f) must carefully balance the 'interest of the nonparty in obtaining local resolution of [a subpoena-related] motion' against the interest 'in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court.'" *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 375 (D.D.C. 2017) (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)); *see also Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) ("[C]ourts have found exceptional circumstances warranting transferring subpoena-related motions . . . when transferring the matter is in the interests of judicial economy and avoiding inconsistent results." (citation and internal quotation marks omitted)). In conducting this balancing, a court must determine if "the issuing court is in a better position to rule on the motion due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (citation and internal quotation marks omitted).

Courts in this jurisdiction have identified several factors that support a finding of exceptional circumstances, including the "complexity [of the underlying matter], [its] procedural posture, [the] duration of pendency [of the underlying case], and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 376 (internal quotation marks omitted) (quoting *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d at 288). "At bottom, the established considerations appear to relate to three overarching questions: (1) whether the

11

underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel." *Id.* Having weighed those considerations here, the Court concludes that the Southern District of Ohio is best positioned to address the merits of Plaintiffs' motions to compel, given the posture and complexity of the underlying litigation; and that the burden placed on Respondents by the transfer would not outweigh the exceptional circumstances warranting transfer.

### 1. The Southern District of Ohio is Best-Positioned to Address the Subpoena Disputes

Plaintiffs and Respondents vigorously dispute whether, and to what extent, the underlying litigation in the Southern District of Ohio would be disrupted by this Court's decision to address the merits of their subpoena disputes, rather than transferring those disputes to the issuing court. Plaintiffs contend that the Southern District of Ohio is uniquely positioned to ensure consistent decisions across the subpoena disputes, within the narrow discovery deadlines imposed by that court. *See* Gillespie Transfer Mot. at 6. Unsurprisingly, Respondents counter that this case is not "exceptional," and that this Court is in fact better-positioned to address the disputes. *See* Gillespie Transfer Opp'n at 7–8; RNC Transfer Opp'n at 5. While the question is perhaps closer in this case than in certain of the cases cited by Plaintiffs, the Court concludes that transfer is appropriate to avoid disrupting the underlying litigation.

In support of their argument, Plaintiffs rely heavily on *In re Disposable Contact Lens Antitrust Litig.*, in which the underlying action, which had been actively litigated for years in the Middle District of Florida, was an MDL consolidating more than fifty lawsuits challenging a highly complex price fixing scheme. *Id.*, 306 F. Supp. 3d at 376–77. In transferring a subpoena

12

dispute arising from that action back to the Middle District of Florida, another court in this jurisdiction noted that the federal statute allowing for MDL consolidation, 28 U.S.C. § 1407, arguably granted the transferee court jurisdiction to enforce the subpoena, notwithstanding Federal Rule 45's procedural requirements. *Id*. at 377. The court also reasoned that "the MDL status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in favor of transfer to the [i]ssuing [c]ourt under Rule 45(f), because the same concerns about orderliness and disruption that led to the consolidation of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation." *Id*. Clearly, as Respondents note, Gillespie Transfer Opp'n at 9, the underlying action here does not approach the complexity of an MDL, nor does it involve the same procedural wrangling or lengthy pendency. That said, despite Respondents' attempts to downplay the underlying action's complexity, Plaintiffs have asserted a theory that is on the cutting edge of constitutional law. *See APRI*, 2018 WL 3872330, at *2–7 (denying the defendants' motion to dismiss the underlying action, noting that recent Supreme Court decisions have left open "the question of whether partisan gerrymandering claims, brought under any theory of harm, are justiciable," and discussing Plaintiffs' standing arguments in light of recent Supreme Court and District Court decisions). Moreover, many of the factors underlying the court's finding of "exceptional circumstances" in *In re Disposable Contact Lens Antitrust Litig.* and other cases in this jurisdiction weigh in favor of transfer here.

First, the posture of discovery in the underlying action weighs in favor of transfer. The Southern District of Ohio "has issued comprehensive case management orders that have defined the scope of permissible discovery, and has set [a] detailed pretrial schedule[] for discovery [and] dispositive motions." *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 379;

*see, e.g.,* July 17, 2018 Calendar Order, *APRI*, S.D. Ohio ECF No. 41; July 25, 2018 Minute

Entry & Notation Order, *APRI* (summarizing discovery status conference in which the court

imposed production deadlines and discussed legislative privilege, the parties' proposed

protective order, and the parties' proposed ESI protocol); Sept. 14, 2018 Minute Entry &

Notation Order, *APRI* (summarizing telephonic discovery status conference during which the

court imposed deposition limits on the parties). And as both parties note, the Southern District of

Ohio's case management plan imposes a rapidly approaching discovery deadline—December 19,

2018—with an eye towards trial in March 2019. Calendar Order, *APRI*, S.D. Ohio ECF No. 41.

Should this Court decline to transfer the subpoena disputes, the time it must take to familiarize

itself with the underlying action would risk disrupting the Southern District of Ohio's case

management order. S*ee Duck v. SEC.*, 317 F.R.D. 321, 325 (D.D.C. 2016) (noting that transfer

"is appropriate where [it] would avoid interference with a time-sensitive discovery schedule

issued in the underlying action" (citing *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*,

309 F.R.D. 41, 43–44 (D.D.C. 2015)); *Google, Inc. v. Digital Citizens Alliance*, No. 15-0707,

2015 WL 4930979, at *3 (D.D.C. July 31, 2015) (determining that transfer was appropriate

where "not transferring the subpoena-related motions carrie[d] with it the potential of interfering

with the discovery timeline of the underlying litigation").

Respondents attempt to frame the matter's impending discovery deadline as weighing

against transfer, because they claim that transfer will require time-consuming new briefing.

Gillespie Transfer Opp'n at 10.[7] However, the Southern District of Ohio has established a

---

[7] Mr. Gillespie and Mr. Morgan also claim that transfer is inappropriate because the
Southern District of Ohio lacks personal jurisdiction over Mr. Gillespie, and thus would be
required to further transfer the subpoena dispute to another court with personal jurisdiction over
Mr. Gillespie to enforce any order granting Plaintiffs' motion to compel. Gillespie Transfer
Opp'n at 10. However, the 2013 Advisory Committee Note to Rule 45 contemplates that

streamlined process for resolving discovery disputes during phone hearings, with relatively little briefing. *See, e.g.,* Judge Black's Standing Order Governing Cincinnati Civil Procedure at 4 (stating that the parties may request informal discovery conferences during which Judge Black "will recommend how the parties should resolve their discovery dispute"), RNC Transfer Opp'n Ex. B, ECF No. 9-1; Tr. of July 10, 2018 Preliminary Pretrial Conference at 19:2–7, *APRI* (stating that before a discovery dispute hearing the parties should submit "a two- to three-page letter laying out the issues that present and the parties' positions," and then at the hearing the court will "give [the participants] [the court's] seat-of-the-pants reaction and tell [the participants] where [the court] think[s] it would shake out"), S.D. Ohio ECF No. 44; Sept. 14, 2018 Minute Entry & Notation Order, *APRI* (summarizing telephonic discovery conference during which Judge Black heard oral arguments and resolved a discovery dispute).[8] Moreover, as stated in a case Respondents cite in support of their oppositions, "transferring a motion to the jurisdiction where the underlying litigation is pending requires few, if any, modifications of the written submissions." *Google, Inc.*, 2015 WL 4930979, at *4 (quoting *Wultz*, 304 F.R.D. at 45). While the short pendency of the underlying suit may weigh against transfer, *see Flynn v. FCA*

---

"retransfer may be important to enforce [such an] order." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. Enforcing a discovery order is typically far less complex than crafting a discovery order. *See Wultz*, 304 F.R.D. at 43–44 (disregarding the respondents' concerns regarding the issuing court's personal jurisdiction over the subpoena recipient).

[8] As Respondents note, RNC Transfer Opp'n at 10, federal law requires that a trial in the underlying action must be conducted by a three-judge panel. 28 U.S.C. § 2284(a) ("A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts"). And as Respondents also note, RNC Transfer Opp'n at 10, Judge Black's discovery decisions are immediately appealable to this panel under § 2284(b)(3). While this unique appeals mechanism may slow the Southern District of Ohio's streamlined discovery process, it also weighs in favor of transfer to protect the parties' appeal rights, as it is unclear that discovery decisions made by this Court would be appealable to that panel. Moreover, § 2284(b)(1) states that the panel "shall serve as members of the court to hear and determine the action or proceeding," suggesting that Congress intended that the underlying action remain before the panel to the greatest degree possible.

*US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016), the urgency of discovery, and the Southern

District of Ohio's unique ability to satisfy that urgency, tip the other way.

Second, Plaintiffs' motions to compel would require this Court to evaluate the relevance

of the documents sought; an evaluation that the Southern District of Ohio is far more capable of

making within the short discovery window. Respondents claim that they and Plaintiffs are "not

asking the Court to make relevance determinations that may or may not prove central to the

underlying litigation," RNC Transfer Opp'n at 6, and that the "gravamen of this case is *not*

relevancy," Gillespie Transfer Opp'n at 13. However, the subpoena dispute briefing suggests

otherwise.

Mr. Gillespie and Mr. Morgan assert two primary arguments in opposing Plaintiffs'

motion to compel, one of which will require the court addressing the subpoena dispute to

evaluate the relevance of the documents sought. *See generally* Gillespie Compel Opp'n. First,

Mr. Gillespie and Mr. Morgan argue that their searches were reasonably designed to identify

documents responsive to Plaintiffs' subpoenas. *Id*. at 10. Second, they argue that both (1)

documents created prior to 2011; and (2) fundraising-related documents are not relevant to

Plaintiffs' complaint, or if relevant "are wildly disproportionate to Plaintiffs' needs." *Id*. at 17–

18.

Similarly, Plaintiffs' subpoena dispute with the RNC, the NRCC, and Mr. Kincaid

concerns those Respondents' First Amendment, attorney-client, and work product privilege

claims, *see* RNC Compel Mot. at 3, which again will require the court addressing the dispute to

evaluate the relevance of the documents sought. In evaluating those Respondents' First

Amendment privilege claim, the court addressing Plaintiffs' motion must "balance the burdens

imposed on [the RNC, the NRCC, and Mr. Kincaid] against the significance of the . . . interest in

disclosure and consider the degree to which [Plaintiffs have] tailored the disclosure requirement to serve [their] interests." *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003); *Wyoming v. U.S. Dep't of Argic.*, 208 F.R.D. 449, 455 (D.D.C. 2002) (stating that before compelling discovery implicating the respondent's First Amendment rights, the court must assess "whether the information goes to the 'heart of the lawsuit'"). In other words, the court must balance the relevance of the information sought against the First Amendment privileges held by the RNC, the NRCC, and Mr. Kincaid. And this balancing must account for the protective order filed in the underlying case, which "may mitigate the chilling effect and could weigh against a showing of [First Amendment] infringement." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 n.6, 1164 (9th Cir. 2010); *see also* RNC Compel Mot. at 12–13; Stipulation & Protective Order, *APRI*, S.D. Ohio ECF No. 57. [9]

Accordingly, while Respondents attempt to downplay the necessity of making relevance determinations in ruling on their subpoena disputes, the disputes belie that framing. Transfer is necessary to allow the court that is most familiar with Plaintiffs' core arguments—the Southern District of Ohio—to evaluate the importance of the documents sought in the subpoenas at issue

---

[9] Respondents note that the Southern District of Ohio has not yet ruled on any discovery disputes, Gillespie Transfer Opp'n at 9, or on any privileges, including the "First Amendment privilege, attorney-client privilege, or the attorney work-product doctrine," RNC Transfer Opp'n at 11. However, Plaintiffs seek documents from the RNC related to the services that Mr. Braden provided to the Ohio legislature. RNC Compel Mot. Ex. A, Request for Production Nos. 3, 9, 13. To the extent that both the RNC and Mr. Braden claim attorney-client privilege over these documents, *see* RNC Compel Opp'n at 35; *Id*. Ex. A, ECF No. 11-2 (describing documents the RNC has withheld from production as privileged, including communications involving Mr. Braden); Braden Quash Mem. I at 2, the same court should evaluate both privilege claims to avoid inconsistent rulings. *See Lipman*, 284 F. Supp. 3d 8, 12–13 (D.D.C. 2018) ("It is clear that courts in this Circuit are concerned about the *potential* for inconsistent results." (citing *Wultz*, 304 F.R.D. at 46)); *Duck*, 317 F.R.D. at 324 (holding that transfer was appropriate, even though the transferee court had "not yet ruled on *any* discovery issues and no discovery motions [were] pending").

to those core arguments. *See Lipman*, 284 F. Supp. 3d at 13 (holding that "[t]he centrality of the relevance assessment weighs in favor of transfer because determining whether information is relevant requires nuanced legal analysis based on a full understanding of the [u]nderlying [a]ction" (citation and internal quotation marks omitted)); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 381–82 (holding that a need to assess the relevance of the documents at issue in the subpoena dispute weighed in favor of transfer); *Flynn*, 216 F. Supp. 3d at 47 (in transferring a discovery dispute, noting that the transferee Judge was "knee-deep in the nuances of the underlying litigation," and thus was clearly "in a much better position than this [c]ourt to evaluate relevance"); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) ("[T]he relevance argument advanced [by the subpoenaed nonparty] emphasizes the need for the court where the underlying matter lies to decide the matter." (citation and internal quotation marks omitted)). Transfer is also necessary to allow the court that issued the protective order to determine the impact of that order on Respondents' First Amendment privilege arguments. *See In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 382 (finding it relevant that a "point of contention between the parties here is whether the protective order that has been issued in the underlying [action] . . . is sufficient to mitigate the privacy concerns Respondent has asserted in his challenge to the subpoena"); *see also* July 25, 2018 Minute Entry & Notation Order, *APRI* (ordering the parties to amend their proposed stipulated protective order to comply with Sixth Circuit precedent). Thus, "transfer is appropriate to avoid disrupting" the management of the underlying litigation "[i]n light of the short discovery window and the complexity of the issues raised by the [subpoena-related motions]," not to mention the Southern District of Ohio's strong interest in resolving disputes involving such a personal right of Ohio citizens. *Fed. Home Loan Mortg. Corp.*, 309 F.R.D. at 43–44; *cf. Gulf Restoration Network v.*

*Jewell*, 87 F. Supp. 3d 303, 311 (D.C. Cir. 2015) ("Ultimately, the localized interest of Alabama's citizens in having this controversy decided in Alabama tips the scales in favor of transfer.").

Third, as suggested in the 2013 Advisory Committee Note to Federal Rule 45(f), this Court has consulted with Judge Black, who does not disagree with the Court's assessment that the complexity and posture of the underlying case and the interests of judicial efficiency would be best served by transferring the subpoena disputes to the Southern District of Ohio.  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.").  In light of these considerations, the Court concludes that transferring the subpoena dispute to the Southern District of Ohio promotes Rule 45(f)'s interests in avoiding disruption of the underlying litigation.[10]

### 2. Transfer Will Not Unduly Burden Respondents

Mr. Gillespie and Mr. Morgan assert a variety of burden arguments, mostly of the logistical variety, none of which persuade the Court that transfer would impose an undue burden on them.  First, Mr. Gillespie and Mr. Morgan argue that "transfer would require new briefing under Sixth Circuit law, which would be expensive and cause further delay."  Gillespie Transfer Opp'n at 15.  However, as noted above, "transferring a motion to the jurisdiction where the

---

[10] Mr. Gillespie and Mr. Morgan cite several non-binding, out-of-Circuit, unreported cases in which courts declined to transfer subpoena disputes to their issuing courts. *See, e.g., Snow v. Knurr*, No. 18-mc-09015, 2018 WL 4101519 (W.D. Mo. Aug. 28, 2018); *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 12-1361, 2015 WL 5934760 (D. Mass. June 18, 2015) adopted, No. 15-mc-94003, 2015 WL 5944286 (D. Mass. Aug. 27, 2015); *CMB Expert, LLC v. Atteberry*, No. 14-mc-51, 2014 WL 2197840 (N.D. Tex. May 27, 2014); *Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 13-238, 2014 WL 272088 (E.D. Pa. Jan. 24, 2014).  These cases do not persuade this Court that it should deviate from the principles established by courts within this Circuit, as applied above.

underlying litigation is pending requires few, if any, modifications of the written submissions, [and] does not rise to the level of unfair prejudice." *Google, Inc.*, 2015 WL 4930979, at *4 (quoting *Wultz,* 304 F.R.D. at 45); *see also Agincourt Gaming, LLC v. Zynga, Inc.*, No. 14-0708, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014) (holding that "absent unusual circumstances, the cost of litigation alone does not constitute an unfair burden").  Second, Mr. Gillespie and Mr. Morgan express concern that they or their counsel may be required to travel to the Southern District of Ohio to assist in resolving the subpoena disputes.  However, the case management plan in the underlying action expressly provides for telephonic hearings, and the 2013 Advisory Committee Note to Federal Rule 45(f) "encourage[s] [judges] to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending."  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.  Moreover, Mr. Gillespie and Mr. Morgan admit that their counsel "are admitted in the underlying matter on behalf of unrelated parties."  Gillespie Transfer Opp'n at 15.  Thus, "the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced because [Mr. Gillespie and Mr. Morgan are] represented by a firm familiar with this litigation and the issuing court."  *Lipman*, 284 F. Supp. 3d at 11 (internal quotation marks omitted) (quoting *Judicial Watch*, 307 F.R.D. at 35).

The RNC, the NRCC, and Mr. Kincaid put forth a more nuanced burden argument, but they too fail to persuade the Court that they would be unduly burdened by a transfer.  First, they argue that the D.C. Circuit has developed a more fulsome body of First Amendment case law than the Sixth Circuit, and that this Court and this Circuit are "familiar with cases concerning political party structure and associations and the inner-workings of those associations."  RNC

20

Transfer Opp'n at 15–16. They claim that they would "suffer prejudice" if deprived of access to this base of knowledge. *Id.* However, courts in this Circuit follow the principle that a "transferee federal court is competent to decide federal issues correctly," *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.C. Cir. 1987) (quoting Richard L. Marcus, *Conflict Among Circuits & Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 679 (1984)), and this Court is fully confident that these Respondents will receive a fair shake in the Southern District of Ohio. Second, these Respondents argue that their counsel may be burdened by travel to Ohio, should their subpoena dispute be appealed to the three-judge panel, and should that panel hold oral argument on the appeal. RNC Transfer Opp'n at 16–17. This hypothetical does not persuade the Court that transfer would impose an undue burden on the RNC, the NRCC, and Mr. Kincaid, because "there is a strong possibility that [Respondents'] counsel will not even need to leave Washington, D.C. to litigate the" subpoena dispute. *Lipman*, 248 F. Supp. 3d at 11 (quoting *Flynn*, 216 F. Supp. 3d at 49).

## V. CONCLUSION

For the foregoing reasons, the Court concludes that (1) the subpoena disputes involving Mr. Braden should be transferred to the Southern District of Ohio because Mr. Braden consents to that transfer; and (2) the subpoena disputes involving Mr. Gillespie, Mr. Morgan, the RNC, the NRCC, and Mr. Kincaid should be transferred to the Southern District of Ohio because there are "exceptional circumstances" warranting transfer. *See* Fed. R. Civ. P. 45(f). Accordingly, it is hereby **ORDERED** that Mr. Braden's Motions to Transfer (*Braden Subpoena I*, ECF No. 13; *Braden Subpoena II*, ECF No. 4) and Plaintiffs' Motions to Transfer (*Gillespie & Morgan Subpoenas*, ECF No. 7; *RNC, NRCC, & Kincaid Subpoenas*, ECF No. 2) are **GRANTED**. Accordingly, it is **FURTHER ORDERED** that the miscellaneous proceedings addressed by this

Memorandum Opinion shall be **TRANSFERRED** to the Southern District of Ohio.  An Order

consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  October 31, 2018                                              RUDOLPH CONTRERAS
                                                                                          United States District Judge